MACKIE and others *v.* CAIRNES, SEDGWICK and LORD, 5 Cow. 547.

In Ch. 1 Hopkins' R. 373.

*Fraudulent Trust, and Reservation for Benefit of Assignor.*

CAIRNES, a merchant possessing considerable property and being largely indebted became insolvent, in March, 1823. On the 25th of that month, on the 7th and 18th of April, and on the 29th of July in the same year, he executed to Sedgwick and Lord, certain instruments, by which he conveyed to them all his property in trust. The several trusts were expressed in those instruments; the creditors were thereby ranked in classes, and were to be paid in a certain order of priority. The first of the deeds declared one of the trusts in the following terms: "In trust, that the said S. and L., shall first pay out of the proceeds of the assigned prem-

ises from time to time, for the support of the said W. Cairnes and his family, after deducting all costs and reasonable charges of the said S. and L., at and after the rate of $2,000 per annum, until the said W. C. shall be discharged from his debts under some insolvent or bankrupt law or otherwise; such however not to endure beyond four years." p. 395.

On the 1st of August, 1823, Cairnes confessed a judgment in favor of the assignees, S. and L., for $96,000, with a view to use the same as a *security* to protect the property in their hands as assignees. Mackie and other judgment creditors of subsequent date, charged that this judgment of S. and L. was collusive, and made with intent to hinder and delay them from obtaining payment of their judgment, &c.

Sandford, Chancellor, says: "The judgment was for the sole purpose of securing the creditors intended to be preferred. A judgment confessed to trustees, is one method of giving a preference, and securing payment, and such judgments are held valid by our courts. To consider this judgment as given and taken upon the trusts expressed in the antecedent assignments would be a violent presumption in opposition to all the facts, as they stand before the court." He accordingly held that the assignees were entitled to the fund in question.

But upon the question of *costs*, he took occasion to examine the validity of the assignments. After reciting the trust in favor of Cairnes, he asks:

"Are these assignments valid or void? And what is the legal effect of the trust in favor of Cairnes, the grantor?

" So far as the conveyances made by Cairnes were for his *own use*, it is most evident that they were intended to secure the portion of his estate reserved to himself, against the legal remedies of his creditors. These were then conveyances made to defraud and hinder the creditors of Cairnes.

"But it is urged that these assignments if void, are only so in respect to the portion set apart by C. for his own use; that even as to that portion they are valid in law and void only in equity; and that the assignments not being wholly void, they form a legal title in the assignees, against Mackie, Milne and Lockhart, as creditors.

" The statute enacts that every conveyance made to hin-

der or defraud creditors, shall be clearly and utterly void; and it is repugnant to the terms and sense of this provision, that such a conveyance should be partly void, and in part not void. It is said that adjudged cases have established such a distinction, and those cases must be considered."

The Chancellor then examines the case of *Estwick* v. *Caillaud*, 5 T. R. 420, and the case of *Murray* v. *Riggs*, *ante*. As to the first, he says; "it did not determine that a debtor who is insolvent, may assign all his property in trust first, for his own use, and next, for the payment of some or all of his debts." As to *Murray* v. *Riggs*, he says "that case was very peculiar. But as I understand that case, the Court of Errors did not determine that *every* assignment made by an insolvent debtor of all his property in trust, first for himself, and next for certain of his creditors, is valid either in whole or in part.

"No *creditor* of the bankrupt complained of the assignment. This circumstance was considered very material by Chief Justice Thompson." In page 401, the Chancellor again says, "This case then, in its circumstances, is altogether different from the case of *Murray* v. *Riggs*. That case was decided upon its own peculiar circumstances, and is authority for any case like itself. I can not understand the Court of Errors to legalize by one universal rule, these reservations of an insolvent debtor for his own use; but I understand by their decision that in special cases of *peculiar equity*, the *whole* assignment shall not be subverted by this illegal trust.

"The reservations for the benefit of Cairnes, being illegal and void, are these assignments void only in that respect, or are they void in all their parts? It is an ancient principle that when a deed is made void by a statute, it is void throughout; that the courts can not separate the deed into distinct parts and give effect to those which are legal, while they may annul those which are illegal; but that the whole must be adjudged null.

"This decision destroying the assignments destroys the preference provided by those instruments. The property of the debtor is to be distributed rateably among all his creditors, or if any have a preference, it is only by the ordinary

remedies of law against him." The Chancellor then decreed costs to S. and L. out of the fund in controversy, and left the rest of the costs as in the decree of the Circuit Judge from which the appeal in this case had been taken.

From this decree the assignees of Cairnes appealed, and the validity of the assignment and of the judgments was fully discussed and passed upon by the Court of Errors.

Sutherland, J., who delivered an opinion in favor of affirming the decree of the Chancellor sustaining the judgment, also maintains the validity of the assignments of Cairnes, and of all the reservations in it, 5 Cow. p. 553–566, and he examines the case of *Murray* v. *Riggs*, very fully; maintaining its binding force on authority and on principle; and that it was fully supported by the case of *Estwick* v. *Caillaud*, relied on by Chief Justice Thompson. In page 563, he says: "Nor am I dissatisfied with the decision in *Murray* v. *Riggs*, upon principle. I fully agree with the Chancellor and with the decision in *Hyslop* v. *Clarke*, that if such a provision (for support of assignor) is to be considered conclusive evidence that the conveyances were made with an intent to hinder and delay creditors, it must avoid and destroy the whole assignment; because the statute has declared that all conveyances made with an intent to defraud, shall be absolutely void and of none effect. It is for that very reason, believing that cases may exist, in which such a provision would be neither unjust nor improper, that I would hold it voidable only upon application to a court of equity, and not absolutely void within the statute."

Colden, Senator, who held the assignment and judgment confessed by Cairnes both void, also treats the case of *Murray* v. *Riggs*, as one that ought "in cases *precisely similar in all its circumstances*," to be the rule and guide of the court. "But," he adds, "I shall not attempt to give any other reason for my opinion, than that this court, in the case of *Murray* v. *Riggs*, has decided that such an assignment under such circumstances, is good."

Chief Justice Savage also delivered an opinion in favor of the reversal of the decree of the Chancellor, as to the validity of the judgment, in which he discusses the validity of

the assignment, and the authority and principle of the case of *Murray* v. *Riggs*. He says: "In my judgment all depends upon the validity of the assignments, particularly that of April 18th, 1823. It purports to be a conveyance of the very property out of which the fund in question arises. If it did, then clearly Cairnes was not the owner, when the judgment against him was docketed. If the assignment was fraudulent and void as against creditors, it was valid between the parties. They can not say it was fraudulent."

"I lay the judgment entirely out of the question. Had the plaintiffs intended to rely on it, they should have released to the defendant the property on which it was to become a lien."

"The question then recurs, were those assignments valid; or if not, were they void in part or *in toto*? Suppose the debtor finding himself in failing circumstances, had conveyed the whole of his property to assignees, in trust for himself; could there be a question upon the subject? When a debtor fails, his property in moral justice belongs to his creditors. He is permitted to prefer in payment such creditors as he pleases. This is giving him power enough; but where he appropriates the property to his own use, the act becomes fraudulent, nor does it lie in his power to prescribe terms to his creditors. The law is open to them. They have a right to pursue their debtor in the mode pointed out by law, and any act which obstructs them in their pursuit is against law, and of course void; unless such act appropriates the property to the payment of debts."

The Chief Justice then considers the question as to whether the assignment is void in part only or in toto, and he holds the question settled by the cases of *Hyslop* v. *Clarke*, and *Bell* v. *Austin*, which declare such assignments void *in toto*. How far it is impaired, if at all, by *Murray* v. *Riggs*, he next considers.

After citing the opinion of Chief Justice Thompson on the point of the reservation in that case, as "forming no objection to the appropriation of the residue," he proceeds to examine all the cases cited by him, and comes to the conclusion that the proposition laid down by Chief Justice Thomp-

son "has no adjudged case to support it." He proceeds, p. 584,

"But if the case of *Murray* v. *Riggs,* is to be considered as authority in this case; (and Chief Justice Spencer so considered it in the case of *Austin* v. *Bell,* though he evidently denied its correctness,) if it must be met, then I would ask, in the very appropriate and forcible language of the present Chancellor, "Is it *law* that every insolvent debtor in this state, may by assigning all his property in trust, secure to himself an allowance of $2,000 a year, or any other sum from his own property?" And, I will add, is it not directly against the statute? Our laws have specified what property of a debtor the creditor shall not take from him. Any attempt of a debtor to set apart a fund for his own support, must be fraudulent and void. If he may take $2,000 a year, why not $5,000? And if for four years, why not for ten or even twenty, as in the case of *Murray* v. *Riggs?* To state such a proposition, is a sufficient refutation of it. It offends the moral sense; it shocks the conscience and produces an exclamation! It is directly against the statute, and can not stand before it."

He then proceeds to show, that even if the assignment of Cairnes as it was admitted, could be considered a valid one as to this reservation, that the creditors would be entitled to it by an application to a court of equity. "If, therefore, it is admitted that these creditors would be entitled to it by filing a bill expressly for that purpose, then, I would ask, why turn them out of court, when it is admitted that, if they come in a different attitude, they will be entitled to what they ask? For whose benefit are we to direct all this circuity of action? Surely not for the benefit of the creditors, nor yet for the benefit of the insolvent."

A majority of the court concurring in the result of the opinions of Savage, Chief Justice, and Colden, senator, the decree of the Chancellor sustaining the judgment was *reversed:* and the assignment made to the said R. S. and D. L. jun., was declared to be void "*by reason of the trust or provision contained therein for the benefit of the said William Cairnes.*"

The surplus moneys in court, arising from the sale of the

mortgaged premises for the sale of which the original suit was instituted, were decreed to the judgment creditors, Mackie, Milne, and Lockhart, 1st for their debt and 2d for their costs ; and if not sufficient to pay all their costs in the Circuit Court and Court of Chancery, then so much of the costs as had accrued since the order for the sale of the mortgaged premises, to be paid by Cairnes, Lord and Sedgwick, personally.

Decree of Chancellor thus <i>reversed</i>, 14 to 9.

☞ Thus, no part of the case of *Murray* v. *Riggs*, appears to have been left, after this decision in *Mackie* v. *Cairnes*. The Court of Errors, by the form of its judgment, seems to have been anxious to extinguish the last spark of its vitality.

In the case of *Grover* v. *Wakeman*, 11 Wend. 187, the validity of a stipulation for the release of the debtors, as a condition of the preference of a certain class of creditors, came directly in question ; and the Court of Errors affirmed the Chancellor's decree, declaring the whole assignment void, upon the principles held by Chief Justice Savage, in *Mackie* v. *Cairnes*. Though the construction of the clause in the assignment in *Grover* v. *Wakeman*, which was held to exclude those creditors who refused to release, from all benefit and participation in the fund, was questioned in an able opinion for *reversal* by Senator Edmonds, late Circuit Judge, and now of the Supreme Court ; yet he admitted that if the construction of the Chancellor were the correct one, then the assignment was wholly void. But he maintained that the creditors of the 2d class, by the true construction of the clause in question, were not totally excluded, but came in for their *pro rata* share with the creditors at large, if they refused to release. If this were the true construction, he insisted that the assignment was free from all fraud in law, and the clause a legal and valid provision. See the opinion of Edmonds, senator, 11 Wend. 204–215.

The majority of the court adopting the Chancellor's conclusion, his decree was *affirmed*. It is true that on motion of Mr. Justice Sutherland, whose opinion in the case forms a rather curious contrast with that delivered by him in the

Court of Errors in the case of *Mackie* v. *Cairnes*, the following *resolution* was adopted.

" Resolved, that the assignment is void, because it makes the preference given to the creditors of the assignors designated as class. No. 2, to depend upon the condition that the preferred creditors shall give the assignors an absolute discharge of their debts."

This was passed by aff. 15, neg. 5.

This *resolution* of the court, if to be considered as based upon the construction given to the clause of preference by Senator Edmonds, and adopted also by Mr. Justice Sutherland, seems to settle the question against the conclusion of the former in favor of the validity of the assignment, upon *his* construction of the clause of preference.